UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JIMMY CLAUDE WILLIAMS | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. H-08-2350 |
| | § | |
| THE UNITED STATES OF AMERICA *et* | § | |
| *al*., | | |
| | | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

## I.    INTRODUCTION

Pending before the Court is the defendants', the United States of America ("United States"), Kevin M. McNair ("McNair"), Michael P. Shea ("Shea") (collectively referred to as the "defendants"), motion for dismissal, or for summary judgment (Docket Entry No. 13)[1,] the plaintiff's, Jimmy Claude Williams (the "plaintiff"), response in opposition to the defendants' motion (Docket Entry No. 14), the defendants' reply memorandum (Docket Entry No. 15) and the plaintiff's response to the defendants' reply (Docket No. 16).   After having carefully considered the pleadings, the parties' submissions, the uncontested facts and the applicable law, the Court is of the opinion that defendants' motion for dismissal pursuant to FED. R. CIV. P. 12(b)(5) should be

---

[1] The defendants have styled their motion as a "Motion for Dismissal, or for Summary Judgment."  Thus, the plaintiff was given notice in the original motion that the defendants were seeking summary judgment. Additionally, the plaintiff has had ample opportunity to present evidence in response to the defendants' motion, and has done so.  Therefore, the Court will consider the defendants' motion under the standards governing summary judgment motions under Rule 56 of the Federal Rules of Civil Procedure.

GRANTED as to Officers McNair and Shea, without prejudice[2]; and the defendants'
motion for summary judgment should be GRANTED as to the plaintiff's claims against
the United States.

## II.      FACTUAL BACKGROUND

On or about March 26, 2007, the plaintiff, a 77-year old Navy veteran diagnosed
with lung cancer, arrived at the Michael DeBakey VA Medical Center in Houston, Texas
("MEDVAMC") for medical treatment around 5:50 a.m.  Upon his arrival, the plaintiff
drove his vehicle into the main drive of the MEDVAMC, a restricted parking area
leading up to its main entrance.  The restricted parking area was designated by "No
Parking, Passenger Loading Only, Towing Enforced" signs posted on each column
surrounding the main entrance to the MEDVAMC.  The VA offers free, but limited valet
service at the main entrance of the MEDVAMC on Monday through Friday from 7:00
.am. to 5:30 p.m., except on federal holidays.  For security reasons, individuals arriving at
the MEDVAMC prior to 7:00 a.m. or after 5:30 p.m., were routinely asked to move their
vehicles from the restricted area and to park in the parking lot.

On the morning of the incident, Officer McNair, a VA police officer assigned to
the area and shift supervisor, approached the plaintiff's vehicle and informed him that he
was parked in a no parking area and needed to move his vehicle.  At that time, the
plaintiff contends, he repeatedly told Officer McNair that he had obtained permission to

---

[2] Even if the plaintiff's claims against the defendant officers, McNair and Shea, were not subject to
dismissal under Fed. R. Civ. P.  12(b)(5), the Court determines that the defendants would also be entitled to
summary judgment on the plaintiff's claims against them under § 1983 and *Bivens*.

park in the area and was not moving.[3]  He further asserts that Officer McNair advised him to move his vehicle or he would be arrested.  According to Officer McNair, after he instructed the plaintiff to move his vehicle, the plaintiff responded by becoming angry and defiant and refusing to move his vehicle.  He asserts that the plaintiff shouted, "I'm not moving."  As a consequence, Officer McNair contends that he called the dispatcher for police backup.

Shortly thereafter, Officer Shea arrived on the scene.  He asserts that, at the time of his arrival, he heard Officer McNair telling the plaintiff that he needed to move his vehicle.  Both he and Officer McNair contend that the plaintiff responded to McNair's orders, by stating that he was a military veteran and they had no authority to make him move his vehicle.  They further assert that the plaintiff began to scream, "I'm not moving!"

Officers McNair and Shea then approached the plaintiff's vehicle in an effort to usher him out of it.  While Officer McNair opened the driver's side door, Officer Shea opened the passenger's side door and reached inside to unbuckle the plaintiff's seatbelt. At this point the facts are disputed as Officers McNair and Shea assert that as McNair reached for the plaintiff's arm, the plaintiff began striking him with his arms and closed fists.  They contend that Officer McNair warned the plaintiff several times to stop striking him or he would be "pepper-sprayed."   They further contend that, despite

---

[3] According to the plaintiff, "[b]ecause of his age and disability and the fact that long lines form at the VA Hospital right at 7:00 . . .," a few days prior to the incident, he had gone to consumer affairs and obtained "permission" from a person working there to arrive at the hospital prior to 7:00 a.m. and park his vehicle out of the way, but near the main entrance.  (Docket Entry No. 14, Ex. A.)  According to Fred Webb, however, a non-employee volunteer working in the Consumer Affairs Office on March 23, 2007, when the plaintiff came in, he has never given anyone permission to park his vehicle in the no-parking area, nor would he have had the authority to do so.  (Docket Entry No. 13, Ex. G.).  Further, Officer McNair testified that he had not received any special accommodation orders from anyone in authority to allow anyone to park in the no parking area.  (*Id.*, Ex. B.)

Officer McNair's warnings, the plaintiff continued striking him.  As a result, they aver that Officer McNair administered a brief discharge of Oleoresin Capsicum ("pepper spray") to subdue him.  Thereafter, they contend that the plaintiff continued to resist by tensing his body and forcefully gripping the steering wheel.  As they attempted to pry his hands from the steering wheel, they allege that he quickly reached for his pant pocket, which they perceived as an imminent safety threat.  They further assert that they reacted, for their safety, by quickly pulling the plaintiff from the cab of his truck with a reasonable amount of force to the ground, patting him down and handcuffing him with his hands behind his back.  Thereafter, they allege they accompanied the plaintiff to his feet.

In contrast, the plaintiff contends that Officer McNair opened the driver's side door to his vehicle and started pulling his arm away from the steering wheel.  He alleges that at this time, he just held on to the steering wheel.  He also contends that he did not hit Officer McNair or even try to hit him.  He further asserts that he did not reach for anything in his pocket.  He avers that while holding on to the steering wheel of his vehicle, Officer McNair sprayed him in the eyes with pepper spray, while Officer Shea approached the passenger's side door, unbuckled his seatbelt and started shoving on him. With Officer Shea pushing him, the plaintiff contends that Officer McNair hit his hands and arms, jerked him from his truck and threw him on the ground where his hands were forced behind his back and he was handcuffed.  After he was handcuffed, he contends that they demanded that he get up.  He alleges that when he told them he could not get up, they started kicking and cursing him and eventually jerked him up, one on each side of him.

Afterward, the plaintiff was immediately escorted to the emergency room so that he could undergo the decontamination process for the pepper-spray administered.  He was then briefly placed in a holding cell where he was examined by physicians for competency in consideration of formally charging him with assaulting an officer.  A decision was made not to prosecute him and no formal charges were ever filed.  Later that morning, the plaintiff was released to attend his scheduled medical appointment.  According to the plaintiff, as a result of his encounter with Officers McNair and Shea, he suffered "severe bruising and scrapes upon his body" and "extreme pain from being kicked and sprayed in the eyes with pepper spray."

On August 28, 2007, the plaintiff timely presented his claim to the defendants by certified mail to the Department of Veterans Affairs, Office of Regional Counsel, 6900 Almeda Road, Houston, Texas 77030.  On July 29, 2008, he commenced the instant action against the United States and Officers McNair and Shea, individually, alleging various claims.  Specifically, with respect to Officers McNair and Shea, he asserts claims under 42 U.S.C. § 1983,[4] for alleged violations of his Fourth and Fourteenth Amendment rights, as well as state law claims for assault and battery, unlawful restraint, negligence and intentional infliction of emotional distress.  With regard to the United States, he has alleged claims for violations of his aforementioned constitutional rights premised on the doctrines of respondeat superior and ratification under § 1983.  He also seeks to hold the United States liable for McNair and Shea's actions under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b).

---

[4] Section 1983 provides that "every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.

On July 15, 2009, the defendants filed the instant motion for dismissal, or for summary judgment.

## III.   CONTENTIONS OF THE PARTIES

### A.   The Defendants' Contentions

The individual defendants, McNair and Shea, move for dismissal under Rules 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure because more than twelve months have lapsed since the filing of the plaintiff's complaint and they have yet to be served.  They aver that the 120-day period for service under Rule 4(m) has expired and the plaintiff has failed to show "good cause" for his failure to effect service on McNair and Shea.  The defendants also contend that the plaintiff has no cause of action against them under § 1983, as no state action has been alleged.  They further contend that the plaintiff has made no attempt to initiate a *Bivens* action against them in this case, as he never asserts that he ever intended to bring a *Bivens* action nor does he allege that jurisdiction exists pursuant to 28 U.S.C. § 1331.  They assert that had the plaintiff properly initiated a *Bivens* action against them, his conclusory allegations would still fail to establish a constitutional deprivation because the defendant officers are entitled to qualified immunity.  The defendants further aver that the plaintiff's claims brought pursuant to the FTCA fail because essential elements are lacking.  Finally, the defendants argue that the plaintiff's request for continuance should be denied as the discovery deadline has passed in this case.

### B.   The Plaintiff's Contentions

The plaintiff contends that the defendants' motion for dismissal or summary judgment should be denied as genuine issues of material fact exist as to whether McNair

and Shea used excessive force in arresting and injuring him.   With regard to the defendants' argument concerning insufficient service of process, the plaintiff asserts that since an Answer was filed on behalf of the United States and McNair and Shea, the requirement of obtaining personal service on McNair and Shea, in their individual capacities, has been waived or the expense and practicality of obtaining personal service under the circumstances is unnecessary.   Next, he contends that this Court clearly has jurisdiction over the subject matter of his claims pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1346(b), the Fourth Amendment of the United States Constitution and Texas law.   He also argues that McNair and Shea are not entitled to qualified immunity in this case because their actions were objectively unreasonable under the circumstances and clearly excessive.   He further avers that his pleadings are sufficient to give the defendants fair notice of his claims as required by Rule 8 of the Federal Rules of Civil Procedure. Finally, he argues that because discovery in this case has not been completed and a reasonable time for discovery has not passed, the defendants' motion for summary judgment should be either denied outright or additional discovery should be permitted before the Court considers granting summary judgment in the defendants' favor.

## IV.   STANDARDS OF REVIEW

### A.   Standard Under Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court "before any other challenge because the court must find jurisdiction before determining the validity of a claim."   *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted). Since federal courts are considered courts of limited jurisdiction, absent jurisdiction

conferred by statute, federal courts lack the power to adjudicate claims.  *See*, *e.g.*, *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)).  Therefore, the party seeking to invoke the jurisdiction of a federal court carries the burden of proving its existence.  *Stockman*, 138 F.3d at 151; *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In reviewing a motion to dismiss for lack of subject matter jurisdiction, a district "court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez v. Department of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) (citing *Land v. Dollar*, 330 U.S. 731, 735 & n. 4, 67 S. Ct. 1009, 91 L. Ed. 1209 (1947)).  It may base its disposition of such a motion on any of the following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Montez*, 392 F.3d at 149 (citing *Robinson v. TCI/US W. Communications Inc.*, 117 F.3d 900, 904 (5th Cir. 1997)).  In this regard, "no presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case." *Montez*, 392 F.3d at 149.

"However, where issues of fact are central both to subject matter jurisdiction and the claim on the merits, . . . the trial court must assume jurisdiction and proceed to the merits" of the plaintiff's case. *Id.* at 150.  When a "defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with

the objection as a direct attack on the merits of the plaintiff's case' under either Rule 12(b)(6) or Rule 56."  *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)).  Thus, "a jurisdictional attack intertwined with the merits of [a cause of action brought pursuant to a federal statute] should be treated like any other intertwined attack, thereby making resolution of the jurisdictional issue on a 12(b)(1) motion improper." *Montez*, 392 F.3d at 150.  Since the parties in this case have submitted matters outside the pleadings for consideration by this Court, such as affidavits, declarations and deposition testimony, the Court, in accordance with Rule 12 and the great weight of legal authority, will consider the defendants' motion under the standard governing summary judgment.

### B.      Standard Under Federal Rule of Civil Procedure 56

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets its burden, the nonmoving party must then "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting FED. R. CIV. P. 56(c), (e)).

In adjudicating a motion for summary judgment, a court is required to view all facts in the light most favorable to the nonmoving party and any inconsistencies are to be

resolved in the nonmoving party's favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  During this time, a court must also look to the substantive law underlying the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[T]he substantive law will identify which facts are material."  *Id.*  "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party."  *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004).  Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251 - 52).

## V.     ANALYSIS AND DISCUSSION

### A.     The Plaintiff's Service of Process on the Defendant Officers in Their Personal Capacities.

The individual defendant officers, McNair and Shea, contend that the plaintiff failed to perfect service on them in their individual capacities and move for dismissal pursuant to Rules 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure.  The plaintiff, however, argues that since an Answer was filed on behalf of the individual officers as well as the United States, the requirement of personal service upon McNair and Shea has been waived in accordance with Rule 12(h)(1) of the Federal Rules of Civil Procedure.  He further contends that the expense and practicality of obtaining personal service under existing circumstances should cause personal service to be unnecessary in this case.  The Court disagrees and will now address whether the individual defendants waived their insufficient service of process defense.

Rule 12(b) mandates that the defense of insufficient process or insufficient service of process be asserted in the responsive pleading if one is required or by motion.  FED. R. CIV. P. 12(b).  If the assertion of the defenses is made by motion, the motion must be made before pleading if a responsive pleading is required.  *Id.*  "No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion."  *Id.*  Rule 12(h)(1) further provides that "[a] party waives any defense listed in Rule 12(b)(2) – (5) by: . . . failing to either:  (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course."  FED. R. CIV. P. 12(h)(1).  Here, the first responsive pleading to be filed is the defendants' answer and the record demonstrates that the defendants first raised the "insufficient service of process" defense in their Answer filed on October 14, 2008, in response to the plaintiff's Complaint.  Thus, the Court finds that the defendants have not waived their insufficient service of process defense and will now examine whether service of process on Officers McNair and Shea was sufficient in this case.

Rule 4(i) of the Federal Rules of Civil Procedure sets forth the rules governing service of process on the United States, its agencies, corporations, officers or employees. With regard to obtaining service on an officer or employee of a United States agency sued in his or her individual capacity, it provides as follows:

> **(3)** **Officer or Employee Sued Individually.**  To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States *and* also serve the officer or employee under Rule 4(e), (f), or (g).

Fed. R. Civ. P. 4(i)(3) (emphasis added).  Because the issue in this case concerns whether

service of process was properly effected on individuals within this judicial district—other

than minors, incompetents, or persons on whose behalves waivers of service have been

filed--the plaintiff was required to comply with Rule 4(e) of the Federal Rules of Civil

Procedure.  *See* Fed. R. Civ. P. 4(e).  Rule 4(e) specifically provides as follows:

> (**e**)    **Serving an Individual Within a Judicial District of the United
> States**.   Unless federal law provides otherwise, an individual--
> other than a minor, an incompetent person, or a person whose
> waiver has been filed--may be served in a judicial district of the
> United States by:
>
> (1) following state law for serving a summons in an action brought
> in courts of general jurisdiction in the state where the district court
> is located or where service is made; or
> (2) doing any of the following:
>
> > (A) delivering a copy of the summons and of the complaint
> > to the individual personally;
> >
> > (B) leaving a copy of each at the individual's dwelling or
> > usual place of abode with someone of suitable age and
> > discretion who resides there; or
> >
> > (C) delivering a copy of each to an agent authorized by
> > appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  Rule 4(m) further maintains that if service is not perfected on a

defendant within 120 days after the filing of the complaint and there is no showing of

good cause for the failure to effect such service, a court is required to either dismiss the

action without prejudice or order that service be made within a precise time.  *See* Fed. R.

Civ. P. 4(m).

Moreover, "[w]hen service of process is challenged, the serving party bears the

burden of proving its validity or good cause for failure to effect timely service."  *Systems*

*Signs Supplies v. U.S. Dept. of Justice, Washington, D.C.*, 903 F.2d 1011, 1013 (5th Cir. 1990) (citing *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305 (5th Cir. 1985); *Aetna Business Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. Unit A Jan. 1981)).  In the Fifth Circuit, the standard for "good cause" requires a litigant "to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice.'"  *Systems Signs Supplies*, 903 F.2d at 1013 (quoting *Winters*, 776 F.2d at 1306 (emphasis omitted)).  "Additionally, the claimant must make a showing of good faith and establish 'some reasonable basis for noncompliance within the time specified.'"  *Id.* (internal citation and quotation marks omitted).  "[A] district court enjoys a broad discretion in determining whether to dismiss an action for ineffective service of process."  *George v. U.S. Dept. of Labor, Occupational Safety & Health Admin.*, 788 F.2d 1115, 1116 (5th Cir. 1986).

This Court concludes that service of process upon the individual defendant officers, McNair and Shea, is insufficient in this case.  Although ample time existed within which to effect service of process on them, the plaintiff has failed to do so despite the notice given and the several options available to him under the Federal Rules of Civil Procedure.  He also has not succeeded in establishing good cause sufficient to excuse his non-compliance in this instance.  Indeed, the 120-day time limitation for service provided by Rule 4(m) has long come and gone, as more than thirteen months have passed since the filing of the Complaint and the individual defendant officers have still yet to be served in their personal capacities.  The fact that they received actual notice of the lawsuit and were furnished with an attorney to represent their interests in the lawsuit is insufficient to satisfy Rule 4's requirements as the plaintiff insinuates.  *Way v. Mueller*

*Brass Co.*, 840 F.2d 303, 306 (5th Cir. 1988) ("The defendant's actual notice of the litigation . . . is insufficient to satisfy Rule 4's requirements.")  Further, the plaintiff has failed to set forth any circumstances in this case to suggest that this Court should circumvent the mandate of Rule 4(m) and grant an extension of the 120-day service period.  Thus, the defendants' motion to dismiss McNair and Shea, in their individual capacities, is granted without prejudice.

   **B.     The Plaintiff's Claims for Violation of his Constitutional Rights
            Under 42 U.S.C. § 1983**

   Even assuming that the plaintiff had effected service on the individual defendant officers, his cause of action against them and the United States under § 1983 would still fail as the plaintiff has alleged no state action.  *Lyons v. Sheetz*, 834 F.2d 493, 495 (5th Cir. 1987) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S. Ct. 2764, 73 L. Ed.2d 418 (1982)).  In other words, "to state a valid claim under § 1983, a plaintiff must [not only] allege a violation of rights secured by the Constitution or laws of the United States [but also] demonstrate that the alleged deprivation was committed by a person acting under *color of state law*."  *Resident Council of Allen Parkway Vill. v. U.S. Dept. of Hous. & Urban Dev.*, 980 F.2d 1043, 1053 (5th Cir.), *cert. denied*, 510 U.S. 820, 114 S. Ct. 75, 126 L.Ed.2d 43 (1993) (citing *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254, 101 L.Ed.2d 40 (1988)) (emphasis added).

   In this case, the plaintiff is unable to satisfy the second element of his § 1983 cause of action.  More specifically, in *Broadway v. Block*, 694 F.2d 979 (5th Cir. 1982), the Fifth Circuit "held that federal officials, acting under color of federal law rather than state law, are not subject to suit under § 1983."  *Resident Council*, 980 F.2d at 1053 (citing *Broadway*, 694 F.2d at 981).  Therefore, because McNair and Shea are

officers of the United States Department of Veterans Affairs, a federal agency acting under color of federal law, the plaintiff's claims against them under § 1983 fail as a matter of law. The plaintiff's claims against the United States under § 1983 also fail as the doctrine of sovereign immunity bars direct claims or suits against the United States brought pursuant to the civil rights statutes. *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999) (citing *Unimex, Inc. v. United States Dept. of Housing and Urban Development*, 594 F.2d 1060, 1061 (5th Cir. 1979)).

### C. The Plaintiff's Claims for Violation of his Constitutional Rights Under *Bivens*

#### 1. Plaintiff's Claims Against the United States

Although the plaintiff does not specifically assert a *Bivens* claim, the Court, nevertheless, will construe the plaintiff's allegations as an attempt to initiate a *Bivens* action, given that *Bivens* is the federal counterpart of § 1983. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Nacotics*, 403 U.S. 388, 395 – 97, 91 S. Ct. 1999, 29 L.Ed.2d 619 (1971); *see also Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983-the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials."), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 948 - 49 & n. 36 (5th Cir. 2003). "In effect, [*Bivens*] extends the protections afforded by § 1983 to parties injured by federal actors not liable under § 1983." *Abate v. Southern Pac. Transp. Co.*, 993 F.2d 107, 110 n.14 (5th Cir. 1993). Under *Bivens*, just as under § 1983, in order to establish liability, a plaintiff must demonstrate that the allegedly offensive conduct deprived him of rights secured by the Constitution or laws of the United States. *Garcia v. U.S.*, 666 F.2d 960, 962 (5th Cir. 1982). In this case, the plaintiff alleges that the

intentional acts of the defendants, including their assault, unlawful arrest, unlawful detention and use of excessive force, violated his clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution.[5]  (*See* Pl.'s Compl. at ¶ 6.)

In addition to suing the individual officers for the aforementioned alleged violations, the plaintiff has brought suit against the United States.  He contends that the United States is vicariously liable for the acts of McNair and Shea under the doctrines of respondeat superior and ratification.  As previously stated, however, the doctrine of sovereign immunity prohibits lawsuits against the United States under the civil rights statutes.  *Shalala*, 164 F.3d at 286 (citing *Unimex*, 594 F.2d at 1061); *see also Williamson v. U.S. Dept. of Agriculture*, 815 F.2d 368, 380 - 81 (5th Cir. 1987) (explaining that a *Bivens* action only applies against individual federal officers, in their individual capacities . . . [while] "[t]he United States and its officers in pursuit of their official duties remain protected by sovereign immunity").  Moreover, even if the plaintiff's claims in this instance were not barred by the doctrine of sovereign immunity, a "suit for damages against the United States based on the Constitution is not contemplated by *Bivens* and its progeny," *Garcia v. U.S.*, 666 F.2d at 966, as it is well-established that *Bivens* "provides a cause of action only against government officers in their individual capacities." *Shalala*, 164 F.3d at 286.  Further, *Bivens* does not permit a recovery of damages premised on a theory of respondeat superior liability.  *See Cronn v. Buffington*, 150 F.3d

---

[5]  In the jurisdiction section of his Complaint, the plaintiff appears to allege an Eighth Amendment violation.  However, he fails to articulate or even make mention of any facts sufficient to support an Eighth Amendment violation in either his Complaint, response in opposition to the defendants' motion or reply. Moreover, he fails to respond to the defendants' motion for summary judgment on this issue or otherwise acknowledge that he intended to assert an Eighth Amendment claim.  Thus, the Court will construe the plaintiff's failure to respond in this instance as an abandonment or waiver of his Eighth Amendment claim.

538, 544 -545 (5th Cir. 1998) (citing *Abate*, 993 F.2d at 110).  Nor does it allow recovery

based on a theory of ratification, where the record fails to divulge "personal involvement

in the acts causing the deprivation" or the existence of "a policy so deficient that the

policy itself acts as a deprivation of constitutional rights."  *Cronn*, 150 F.3d at 544.

Because the plaintiff has failed to assert any allegations in this regard, the United States is

entitled to judgment as a matter of law on the plaintiff's *Bivens* claim.

**2.      The Plaintiff's Claims Against the Individual Officers**

**a.      Fourth Amendment Claim**

The plaintiff argues that his Fourth Amendment rights were violated by Officers

McNair and Shea's intentional actions, including their assault, unlawful arrest and

detention of him and use of excessive force.  The defendants, on the other hand, contend

that their actions were objectively reasonable under the circumstances and that they are

entitled to qualified immunity.   The analysis of the qualified immunity defense is

identical for lawsuits brought under § 1983 and *Bivens*.  *Wilson v. Layne*, 526 U.S. 603,

609, 119 S. Ct. 1692, 1696 - 1697 (1999) (citing *Graham v. Connor*, 490 U.S. 386, 394,

n. 9, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989)).   Under this doctrine, governmental

officers are safeguarded "from civil liability for damages based upon the performance of

discretionary functions if [their] acts were objectively reasonable in light of then clearly

established law."  *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005)

(quoting *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001)).  The qualified

immunity doctrine has essentially evolved to provide "protection to all but the plainly

incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335,

341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (citing *Harlow v. Fitzgerald*, 457 U.S. 800,

818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)).  "When a defendant invokes [the] qualified immunity [defense], the burden is on the plaintiff to demonstrate the inapplicability of the defense."  *Atteberry*, 430 F.3d at 253 (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)).

The Fifth Circuit has set forth a two-step analysis to govern the determination of whether the defendants are entitled to qualified immunity.  First, a court must determine "whether the facts, either as the plaintiff alleges or as proved without dispute, establish that the officer violated a clearly established constitutional right."  *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004) (citing *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001)).  "If no constitutional right has been violated, the inquiry ends and the defendants are entitled to qualified immunity."  *Id.*  If, however, the plaintiff has alleged a violation of a clearly established constitutional right, the court must next examine "whether the [defendants'] conduct was objectively unreasonable under established law."  *Linbrugger*, 363 F.3d at 540 (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001)); *accord Atteberry*, 430 F.3d at 253.  The Fifth Circuit "has repeatedly held that objective reasonableness in a qualified immunity context is a question of law for the court to decide, not an issue of fact."  *Atteberry*, 430 F.3d at 256 (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999) (stating that "objective reasonableness is a matter of law for the courts to decide, not a matter for the jury") (other citations omitted).

### i.     The plaintiff's false arrest and detention claim

As previously set forth, the plaintiff avers that his Fourth Amendment rights were violated by McNair and Shea's unlawful arrest and detention of him.  A claim of false arrest requires a showing of no probable cause to effect an arrest.  *See Haggerty v. Texas*

*Southern University*, 391 F.3d 653, 655 (5th Cir. 2004) (citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) ("The 'constitutional torts' of false arrest . . . and false imprisonment . . . require a showing of no probable cause.")).  "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."  *Haggerty*, 391 at 655 – 56 (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)).  Veterans Affairs ("VA") police officers are authorized by law to make arrests on VA property for violations of federal law and regulations prescribed by the Secretary of Veterans Affairs.  *See* 38 U.S.C. § 902(a)(3).  Such regulations prohibit "[c]onduct on [VA] property which . . . unreasonably obstructs the usual use of entrances . . . or parking lots [or] which otherwise impedes or disrupts the performance of official duties by Government employees."  38 C.F.R. § 1.218(a)(5).  They also forbid "parking in unauthorized locations . . . or contrary to the direction of posted signs . . . ."  38 C.F.R. § 1.218(a)(12).  Behavior or conduct in violation of any of the aforementioned rules may subject an individual to arrest or removal from VA premises.  *See* 38 C.F.R. § 1.218(b).

Although some facts in this case remain in dispute, such as whether the plaintiff physically assaulted Officer McNair and quickly reached into his pant pocket for something so as to cause alarm to McNair and Shea with regard to their safety, such facts do not affect the Court's analysis of whether Officers McNair and Shea had probable cause to arrest the plaintiff for parking illegally, failing to remove his truck from the restricted parking area when instructed to do so and failing to exit his vehicle upon Officer McNair's demand.   As previously set forth, the principle components of a

probable cause determination are the events which occurred leading up to the arrest or detention.  In this case, it remains undisputed that the plaintiff refused to remove his truck from the restricted parking area when asked to do so or exit it upon Officer McNair's request.

The plaintiff's affidavit submitted in support of his response in opposition to the defendants' motion does not indicate that Officer McNair was yelling at him or out of control at the time he initially approached him and requested that he move his vehicle. Rather, the evidence in the record indicates that the plaintiff was insistent on not moving his vehicle or getting out of it.  In fact, when Officers McNair and Shea opened the door to his vehicle in an attempt to escort him out of it, instead of submitting to the defendant officers' demands, he continued to resist by "tensing his body" and forcefully gripping the steering wheel.  He did not, however, stop resisting until sometime after Officer McNair pepper-sprayed him.  In light of his behavior and the events that took place leading up to his arrest, the Court finds that an objectively reasonable officer would find the existence of probable cause.  An arrest and/or detention such as that which occurred in this case does not violate the Constitution when specific, articulable facts, taken together with rational inferences from those facts, reasonably warrant detention.  *See United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002).  The evidence tendered by the plaintiff does not dispute this finding and fails to overcome Officer McNair and Shea's qualified immunity defenses with respect to the plaintiff's Fourth Amendment false arrest and detention claims.   Therefore, such claims must fail as a matter of law.

### ii.      The plaintiff's excessive force claim

The plaintiff also alleges that the defendants used excessive force during his arrest in violation of his Fourth Amendment rights.  The Fifth Circuit has noted that "the use of

excessive force to apprehend a subject implicates the Fourth Amendment's guarantee against unreasonable seizures." *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997) (citing *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985); *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989)).  "To prevail on an excessive force claim, a plaintiff must establish:  '(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (internal citation omitted)).

"[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Flores v. City of Palacios*, 381 F.3d 391, 398 – 99 (quoting *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S. Ct. 1391, 59 L.Ed.2d 660 (1979)).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Ramirez*, 542 F.3d at 128 (quoting *Graham*, 490 U.S. at 396, 109 S. Ct. 1865).  Courts must consider "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving . . . ." *Id.*  The standard imposed is an objective one and requires a court to inquire as to "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Ramirez*, 542 F.3d at 129 (quoting *Graham*, 490 U.S. at 397, 109 S. Ct. 1865).  In order "[t]o 'gaug[e] the objective reasonableness of the force used by a law enforcement

officer, [a court is required to] balance the amount of force used against the need for that force," *Flores*, 381 F.3d at 399 (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996) (internal citation omitted), while "paying careful attention to the facts and circumstances of each particular case." *Flores*, 381 F.3d at 399 (quoting *Graham*, 490 U.S. at 396, 109 S. Ct. 1865). This balancing test requires a court to also consider "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Ramirez*, 542 F.3d at 129 (quoting *Graham*, 490 U.S. at 396, 109 S. Ct. 1865).

Here, the plaintiff has alleged that he suffered "severe bruising and scrapes upon his body" and "extreme pain from being kicked and sprayed in the eyes with pepper spray.[6]" (*See* Docket Entry No. 14, Pl.'s Resp. in Opp'n to Defs' Mot., p. 2). When accepting these allegations as true, the plaintiff's excessive force claim fails as it is well-settled in the Fifth Circuit that in order to state a claim for excessive force, the plaintiff's alleged injury, though not required to be significant, must be more than *de minimis*. *Freeman*, 483 F.3d at 416 (citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001); *see also Harper v. Harris County, Tex.*, 21 F.3d 597, 600 (5th Cir. 1994) (reasoning that the Supreme Court, in *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed.2d 156 (1992), overruled the significant injury prong in the context of an excessive force claim under the Eighth Amendment and, in applying *Hudson*, a plaintiff is no longer required to demonstrate a significant injury in the context of Fourth Amendment excessive force claim).

---

[6] The plaintiff also seeks damages for "mental anguish" in the past and future. However, there is no evidence in the record to substantiate this alleged injury.

"The determination of whether a plaintiff's alleged injury is sufficient to support an excessive force claim is context-dependent and is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Freeman*, 483 F.3d 416 (quoting *Ikerd v. Blair*, 101 F.3d 430, 435 (5th Cir. 1996)). In *Freeman*, for example, the Fifth Circuit found the plaintiff's allegations that deputies twisted her arms behind her back while handcuffing her, "jerked her all over the carport" and applied the handcuffs too tightly, causing bruises and marks on her wrists and arms, to allege only *de minimis* harm. *Freeman*, 483 F.3d at 416 - 417; *see also Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (finding "acute contusions of the wrist and psychological injury" to merely state *de minimis* harm). Moreover, the Fifth Circuit has held an officer's use of pepper spray during the course of an arrest to not constitute excessive force where the plaintiff persistently resisted the officer's arrest. *See*, *e.g., Stone v. Damons*, No. 06-61087, 2007 WL 3037048, at *1 (5th Cir. Oct. 18, 2007) (per curiam) (affirming summary judgment in defendants' favor in action brought under § 1983 where defendant officer used pepper spray to restrain the plaintiff, pulled her from her car and handcuffed her after she attempted to prevent the officer from unlocking and opening her car door); *see also Oakley v. Weaver*, No. 97-40488, 1998 WL 792669, at *1 (5th Cir. Nov. 2, 1998) (per curiam) (finding use of pepper spray to not constitute excessive force). Further, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *Graham*, 490 U.S. at 396, 109 S.Ct. 1871-72 (citing *Terry v. Ohio*, 392 U.S. 1, 22 - 27, 88 S. Ct. 1868, 1880 – 1883, 20 L.Ed.2d 889 (1968)). Law enforcement officers are often required to use force during the course and scope of their

duties and "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033, *cert. denied*, 414 U.S. 1033, 94 S. Ct. 462, 38 L.Ed.2d 324 (1973)).

As set forth above, the plaintiff alleges that he suffered "severe bruising and scrapes upon his body" and "extreme pain from being kicked and sprayed in the eyes with pepper spray." He also contends that he hurt all over and felt like the officers had broken his ribs. Nevertheless, "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force." *Freeman*, 483 F.3d at 416 (citing *Glenn*, 242 F.3d at 314 (5th Cir. 2001) (swollen wrist and bruising of the wrists and arms held to constitute only *de minimis* harm). Nor does the use of pepper spray to effectuate an arrest constitute excessive force where the plaintiff is shown to have actively resisted arrest. *Stone*, 2007 WL 3037048, at *1. Further, "[i]njuries which result from, for example, an officer's justified use of force to overcome resistance to arrest do not implicate constitutionally protected interests." *Johnson v. Morel*, 876 F.2d 477, 479 - 80 (5th Cir. 1989), *abrogated on other grounds*, *Harper v. Harris County, Tex.*, 21 F.3d 597 (5th Cir. 1994). While the shoving and kicking, as alleged by the plaintiff, may have been unnecessary and inappropriate, the minor injury inflicted support the conclusion that the harm sustained was no more than *de minimis*.

Even assuming that the plaintiff's injuries were more than *de minimis*, the plaintiff has failed to establish that the amount of force used in arresting him was clearly excessive or sufficiently disproportionate to the need presented and objectively

unreasonable under the circumstances.  In fact, in his affidavit filed in opposition to the defendants' motion, the plaintiff does not allege that he was parked legally or that he was docile and compliant during his encounter with Officers McNair and Shea.  (*See* Docket Entry No. 14, Ex. A.)  Instead, he admits that he was parked in the no parking area, that he was uncooperative and refused Officer McNair's various demands that he move his vehicle from the no parking area.  (*Id.*)  He also concedes that he attempted to prevent the defendant officers from extricating him from his vehicle upon his failure to move it by continuously gripping the steering wheel of his vehicle.  (*Id.*)  He fails, however, to proffer any evidence to indicate that his resistance to McNair and Shea's demands was reasonable and necessary under the circumstances.  While some facts concerning the incident are clearly disputed, it, nonetheless, remains undisputed that the plaintiff verbally and physically resisted the officers' efforts to move his vehicle from the no parking area and to escort him out of it upon his failure to move it as instructed, thereby giving rise to the officers' use of force.[7]

Moreover, when questioned by the plaintiff's attorney, during their respective depositions, about the details relating to the events that transpired on the day of the incident, Officers McNair and Shea testified that they:  (1) followed proper protocol; (2) received no authorization granting the plaintiff permission to park in the no parking area; (3) first endeavored to use verbal persuasion to get the plaintiff to comply with Officer McNair's instructions to move his vehicle from the no parking area and to exit his vehicle; (4) made no attempt to strike the plaintiff; (5) warned the plaintiff of Officer

---

[7] Since under the standard applicable in this case the Court is required to draw all reasonable inferences in favor of the nonmovant and avoid a credibility determination as well as the weighing of evidence, the Court will disregard the defendants' allegations that the plaintiff repeatedly hit Officer McNair and reached for something in his pocket as they are disputed and immaterial to its determination.

McNair's use of pepper spray if he continued to act belligerent and defiant; (6) administered one (1) brief discharge of pepper spray upon the plaintiff's continued resistance and act of defiance of forcefully gripping the steering wheel of his vehicle in an effort to prevent them from extracting him from it; (7) pulled the plaintiff from the cab of his truck to the ground with a reasonable amount of force; (8) handcuffed him with his hands behind his back and patted him down; (9) quickly escorted him from the ground to his feet; (10) directly transported him to the emergency room so that he could undergo the decontamination process for the pepper spray administered; and (11) placed the plaintiff in a holding cell for further evaluation.  Later that morning, the plaintiff was released to attend his scheduled medical appointments with no physical injury, other than minor eye irritation from the pepper spray.  (*See* Docket Entry No. 14, Exs. B & C.)  The declarations filed by Officers McNair and Shea, as exhibits in support of their motion, corroborate these contentions. (Docket Entry No. 13, Ex. B & C.)

Further, the plaintiff has failed to offer any evidence to the contrary, other than his own affidavit, alleging that:  (1) with Shea pushing him, McNair hit his hands and arms, jerked him from his truck, threw him on the ground where both of them got on him, forced his hands behind his back and handcuffed him; and (2) after he was handcuffed and had informed them that he could not get up due to his bad leg, they kicked and cursed him.  (*See* Docket Entry No. 14, Ex. A).  While the shoving, kicking and cursing alleged by the plaintiff may have been unnecessary and inappropriate, the actual force used by the defendants and the minor injuries sustained support the contention that the force, like the harm alleged, was no more than *de minimis*.  *See*, *e.g.*, *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (single use of a taser gun was not excessive where Plaintiff

suffered no serious injury and such force was deemed reasonably proportionate to calm belligerent Plaintiff during a traffic stop for inadequate illumination of a tag light); *Durruthy v. Pastor*, 351 F.3d 1080, 1094 -1095 (11th Cir. 2003) (holding that force was *de minimis* where police officer pulled Plaintiff to the ground, pinned his arms behind him, kneed him in the back, and handcuffed him).

When accepting the plaintiff's allegations about his arrest and/or detention as true, the totality of the circumstances support the force used to effectuate the plaintiff's arrest. Even though the plaintiff asserts that he never assaulted Officer McNair or reached for anything in his pocket so as to alarm the officers as to their safety, it remains undisputed that he verbally and physically resisted McNair and Shea's instructions and efforts to detain him.  Given his defiance and refusal to stop resisting prior to being pepper-sprayed, the Court concludes that the plaintiff has failed to proffer evidence to establish that the force and/or the physical actions taken by Officers McNair and Shea were clearly excessive or so sufficiently disproportionate to the need presented or objectively unreasonable under the circumstances so as to constitute a deprivation of the plaintiff's constitutional rights.  Accordingly, Officers McNair and Shea are entitled to judgment as a matter of law on the plaintiff's Fourth Amendment excessive force claim.

### b.   Fourteenth Amendment Claim

The plaintiff's claim against McNair and Shea for constitutional violations premised on the Fourteenth Amendment must also fail because the Fourteenth Amendment, by definition, applies only to state actors, not federal.  *See* U. S. CONST. amend XIV, § 1 ("nor shall any *State* deprive any person of life, liberty, or property, without due process of law . . . .") (emphasis added); *see also Rutherford v. U.S.*, 702 F.2d 580, 583 n.4 (5th Cir. 1983) (noting that "[t]he [F]ourteenth [A]mendment's

restrictions on the powers of the states do not apply to the federal government).  Since McNair and Shea are not state actors, they are entitled to judgment as a matter of law on the plaintiff's claim alleging a constitutional violation premised on the Fourteenth Amendment.

### D.    The Plaintiff's Claims Under the Federal Tort Claims Act

The plaintiff further alleges that the United States is liable to him under the FTCA for his damages and losses.[8]  The FTCA "grants federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and 'render[ed]' itself liable."  *F.D.I.C. v. Meyer*, 510 U.S. 471, 477, 114 S. Ct. 996, 1001, 127 L.Ed.2d 308 (1994) (citing *Richards v. United States*, 369 U.S. 1, 6, 82 S. Ct. 585, 589, 7 L. Ed.2d 492 (1962)).  This category includes lawsuits against the United States for money damages arising from:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Meyer*, 510 U.S. at 477, 114 S.Ct. at 1001 (quoting 28 U.S.C. § 1346(b)(1)).  "By its terms, the waiver of sovereign immunity only applies when the tortfeasor acts within the scope of his employment."  *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006).  In

---

[8] As a jurisdictional prerequisite to filing a suit under the FTCA, a plaintiff is required to "first [present his] claim to the appropriate federal agency and [have] his claim . . . finally denied by the agency in writing and sent by certified or registered mail."  28 U.S.C. § 2675(a).  If the agency fails to make a final disposition within six months of receiving the claim, the plaintiff may thereafter consider the claim finally denied for purposes of filing a claim in district court.  *Id.*  Here, the plaintiff contends that he timely presented his claim to the defendants by certified mail to the Department of Veterans Affairs, Office of Regional Counsel, 6900 Almeda Road, Houston, Texas 77030 on August 28, 2007.  The defendants do not dispute that the plaintiff has exhausted his administrative remedies, that his claim was timely presented or that he placed a value on his claim.  Thus, for purposes of this motion, the Court will presume that the jurisdictional prerequisite has been satisfied.

such actions, the United States is the proper party defendant and claims premised on constitutional tort violations are not cognizable. *Meyer*, 510 U.S. at 477 - 78, 114 S. Ct. at 1001 (reasoning that the Supreme Court firmly precluded such claims stating that the "United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims."); *see also Davis v. United States*, 961 F.2d 53, 57 (5th Cir. 1991) (internal citation omitted) (declaring that "[t]he Federal Tort Claims Act does not encompass federal constitutional torts.")

However, when the government actor is a federal investigative or law enforcement officer, the FTCA waives sovereign immunity for certain intentional torts, including "any claim arising, . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." *Bodin*, 462 F.3d at 484 (quoting 28 U.S.C. § 2680(h)). An "investigative or law enforcement officer" within the meaning of the FTCA is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). Thus, Officers McNair and Shea, as VA officers, are considered law enforcement officers within the meaning of the FTCA.

### 1.     Claims for Assault and Battery

Under Texas law, "[a] person commits an assault if he 'intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.'" *Glenn*, 242 F.3d at 313 (quoting Tex. Penal Code Ann. § 22.01 (Vernon 1994)). The elements required to plead a cause of action for battery in Texas are "(1) a harmful or offensive contact; (2) with a plaintiff's person." *Doe v. Beaumont I.S.D.*, 8 F. Supp.2d 596, 616 (E.D. Tex.

1998) (citing *Price v. Short*, 931 S.W.2d 677, 687 (Tex. App. 1996)).   "When determining whether the conduct of law enforcement officers constituted assault, [battery,] . . . or false arrest under the FTCA, the United States may invoke any defenses available to individual law enforcement officers under Texas law." *McElroy v. U.S.*, 861 F. Supp. 585, 594 (W.D. Tex. 1994) (citing 28 U.S.C. § 2674 (1994)).   "Texas courts have proclaimed that a police officer is entitled to qualified immunity from intentional tort liability 'if he is acting in good faith within the course and scope of his authority, and performing discretionary functions.'" *McElroy*, 861 F. Supp. at 594 – 95 (citing *Vasquez v. Hernandez*, 844 S.W.2d 802, 803 (Tex. App.- San Antonio 1992, writ dism'd w.o.j.); *see Bozeman v. Trevino*, 804 S.W.2d 341, 343 (Tex. App.-San Antonio 1991, no writ); *Dent v. City of Dallas*, 729 S.W.2d 114, 117 (Tex. App.-Dallas 1986, writ ref'd n.r.e.), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988)).   Moreover, any "activity that would otherwise subject a person to liability in tort does not constitute tortious conduct if [the] actor is privileged [or justified] to engage in that conduct." *Garza*, 881 F. Supp. at 1106 (citing *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1231 (5th Cir. 1988), *cert. denied*, 493 U.S. 822, 110 S. Ct. 80, 107 L.Ed.2d 46 (1989)).   In other words, "a privilege recognizes that, because of the nature of their duties, some public officers may perform certain acts that might otherwise be tortious if committed by someone not having those duties." *Garza*, 881 F. Supp. at 1106.   "Under Texas law, if an officer has probable cause-which has been established in this case-he is justified in using such force '[he] reasonably believes is immediately necessary to make an arrest or to prevent escape after the arrest.'" *McElroy*, 861 F. Supp. at 595 (citing TEXAS PENAL CODE ANN. § 9.51(a) (Vernon 1994)).

In this case, the evidence establishes that Officers McNair and Shea had probable cause to arrest and detain the plaintiff.  Moreover, their use of pepper spray to subdue the plaintiff and reasonable force to extricate him from his vehicle appeared necessary under the circumstances.  Nothing in the record indicates that Officers McNair and Shea acted in bad faith or beyond the discretion delegated to other VA officers under the circumstances.  Thus, under Texas law, Officers McNair and Shea are protected by qualified immunity and the plaintiff's assault and battery claims under the FTCA must fail.

### 2.      Claim for "Unlawful Restraint"

The plaintiff asserts that Officers McNair and Shea unlawfully restrained him in violation of Texas law.[9]  Under Texas law, liability for both false arrest and/or false imprisonment will attach when:  (1) there is a willful detention of a person; (2) without his or her consent; and (3) without the authority of law.  *Pete v. Metcalfe*, 8 F.3d 214, 218-219 (5th Cir. 1993) (citing *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985)).  Texas law also permits "[a]ny peace officer [to] arrest, without warrant: . . . persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony  . . . breach of the peace, . . . or threaten, or are about to commit some offense against the laws."  TEX. CRIM. PROC. CODE ANN. art. 14.03(a)(1) (West 2005); *see also Garza v. U.S.*, 881 F. Supp. 1103, 1107 (S.D. Tex. 1995) (internal citation omitted).  Thus, no action will lie against an officer for unlawful restraint, false arrest or false imprisonment where probable cause is shown to have

---

[9] Under Texas law, unlawful restraint is defined as follows:  "A person commits an offense if he intentionally or knowingly retrains another person." TEX. PENAL CODE § 20.02(a).

existed, as the existence of probable cause provides the authority to arrest. *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998). Further, the Texas Penal Code provision cited by the plaintiff in support of his claim for unlawful restraint provides that "[i]t is no offense to detain or move another under this section when it is for the purpose of effecting a lawful arrest or detaining an individual lawfully arrested." TEX. PENAL CODE §20.02(d).

As VA officers, it is undisputed that McNair and Shea possessed the authority to enforce certain laws and regulations on VA property. *See* 38 U.S.C. § 902(a)(3). Inherent in this authority is their ability to require the removal of any person or effects from VA property and to make arrests upon an individual's failure to comply with an officer's directive. *See* 38 C.F.R. § 1.218(b). Because the Court previously determined that probable cause existed to effect the arrest of the plaintiff or to otherwise detain him, the plaintiff's claim of unlawful restraint and/or false arrest or false imprisonment under the FTCA also fails.

### 3.      Claim for Intentional Infliction of Emotional Distress

In order to recover on a claim for  intentional infliction of emotional distress, "the plaintiff must show that (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's actions caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe." *Ward v. Bechtel Corp.*, 102 F.3d 199, 203 (5th Cir. 1997) (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). To constitute extreme and outrageous conduct, the defendants' conduct must have exceeded "all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society." *Garza*, 881 F.

Supp. at 1107 (quoting *Wornick v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. h (1965)). "It is for the Court to determine, in the first instance, whether the [officers'] conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Garza*, 881 F. Supp. at 1107 (quoting *Danawala v. Houston Lighting & Power Co.*, 14 F.3d 251, 256 (5th Cir. 1993) (internal citation omitted)). Because the Court determines that McNair and Shea's conduct was reasonable under the circumstances and was premised on probable cause, the Court determines that their conduct was not extreme and outrageous under the circumstances. Further, the plaintiff has failed to offer proof that the defendants' actions caused him to suffer severe emotional distress. Therefore, the United States is entitled to judgment as a matter of law on the plaintiff's claim for intentional infliction of emotional distress as the essential elements of his claim are lacking.

### 4. Claim for Negligence

The plaintiff generally alleges in his Complaint that as a result of the incident, the defendants are liable to him for negligence. Nevertheless, because the actions complained of by him arise from intentional and/or deliberate acts, the plaintiff's negligence claim also fails. *See, e.g.*, *City of Waco v. Williams*, 209 S.W.3d 216, 223 (Tex. App.-Waco 2006, pet. denied) (noting that excessive force allegations regarding taser incident equated to intentional tort); *City of Garland v. Rivera*, 146 S.W.3d 334, 338 (Tex. App.-Dallas 2004, no pet.) (recognizing that intentional tort claim had been asserted where plaintiff alleged that arrestee resisted arrest and officers used pepper spray, handcuffs and canine). Accordingly, the United States is entitled to judgment as a matter of law on the plaintiff's negligence claim under the FTCA.

### E.      The Plaintiff's Request for Continuance

The plaintiff further avers that the defendants' motion for summary judgment should be denied outright, he should be granted leave to amend his complaint or additional discovery should be permitted before the Court considers granting summary judgment in the defendants' favor.  In this regard, he requests additional time to conduct discovery "to determine if a videotape of the incident exists, or ever existed, since Officer McNair recently testified in his deposition that video cameras operate at or near the area "24-7."  (Docket Entry No. 14 at 7).  He contends that "there is a possibility that the entire incident described above was videotaped . . . [and] such visual evidence will be of great help to the Court, and should be considered, in determining whether or not excessive force was used."  (*Id.*)

The Court construes the plaintiff's response in this respect as a request for continuance to permit additional discovery under FED. R. CIV. P. 56(f).  Rule 56(f) states that "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court . . . may order a continuance to permit . . . depositions to be taken or discovery to be had . . . ."  FED. R. CIV. P. 56(f).  "To obtain to [*sic*] the shelter of rule 56(f), the party resisting summary judgment must present specific facts explaining the inability to make a substantive response as required by rule 56(e) and must specifically demonstrate how discovery will enable him to establish the existence of a genuine issue of material fact."  *Robbins v. Amoco Production Co.*, 952 F.2d 901, 907 (5th Cir. 1992) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 167 (5th Cir. 1991);

*Securities & Exch. Comm'n v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980), *cert. denied*, 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981)).

In addition to his failure to satisfy the formal prerequisites of a Rule 56(f) motion, the plaintiff has failed to demonstrate diligence in his attempts to obtain the discovery he now seeks.  Indeed, the plaintiff has had several months from the time he initially sued the defendants on July 29, 2008, to discover the existence or non-existence of any such videotapes or to depose any persons charged with knowledge, possession and/or control of any video surveillance equipment at the MEDVAMC.  Moreover, the Court notes that the plaintiff only initiated his request for an amendment and/or continuance 14 days after the defendants' filed their motion for dismissal or for summary judgment.  Further, no credible evidence exists in the record to indicate that a videotape of the incident even exists or that video surveillance cameras were even installed in the area where the incident occurred.  Finally, the plaintiff has failed to offer an explanation as to how the discovery he now seeks will provide him refuge from the legal deficiencies that the defendants have raised in their motion.  Because a reasonable time for discovery has passed and the plaintiff has had ample time to conduct the needed discovery, the plaintiff's request for amendment and/or continuance is DENIED.  *See Paul Kadair, Inc. v. Sony Corp.*, 694 F.2d 1017, 1030 (5th Cir. 1983) (quoting *Contemporary Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981) (reasoning that "Rule 56(f) cannot be relied upon to defeat a summary judgment motion 'where the result of a continuance to obtain further information would be wholly speculative.'")).

## VI.    CONCLUSION

Based on the foregoing, the defendants' motion for dismissal pursuant to FED. R. CIV. P. 12(b)(5) is GRANTED, as to Officers McNair and Shea, without prejudice.  *See* text accompanying note 2.  Also, the defendants' motion for summary judgment is GRANTED as to the plaintiff's claims against the United States.

It is so **ORDERED**.

SIGNED at Houston, Texas this 20th day of October, 2009.

_____
Kenneth M. Hoyt
United States District Judge